**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| WASHINGTON FRONTIER LEAGUE BASEBALL, LLC, and STUART A. WILLIAMS, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL E. ZIMMERMAN, MKE BASEBALL, LLC, MKE SPORTS & ENTERTAINMENT, LLC, and FRONTIER PROFESSIONAL BASEBALL, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 1:14-cv-01862-TWP-DML <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER ON MOTIONS TO DISMISS

This matter is before the Court on Motions to Dismiss filed by Defendants Michael E. Zimmerman ("Zimmerman"), MKE Baseball, LLC, and MKE Sports & Entertainment, LLC ("MKE Sports") (collectively, "the Zimmerman Defendants") (Filing No. 39) and Defendant Frontier Professional Baseball, Inc. ("Frontier League") (Filing No. 41).   The Zimmerman Defendants contend that dismissal is warranted pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(3) and 23.1.  Plaintiffs Washington Frontier League Baseball, LLC ("Washington Club") and Stuart A. Williams ("Williams") (collectively, "Plaintiffs") initiated this derivative action on behalf of the Frontier League and themselves after the Zimmerman Defendants secured a baseball expansion opportunity that Washington Club and Williams had been pursuing. Specifically, Plaintiffs allege that the Zimmerman Defendants have conspired to breach fiduciary duties owed to them and tortuously interfered with their business relationships.  For the following reasons, the Court **GRANTS** the Motions to Dismiss.

# I. <u>BACKGROUND</u>

Williams, his wife, and another investor are the owners of the Washington Club, which is a member club in the Frontier League.  Frontier League is an independent, professional baseball league with thirteen teams.  Each Frontier League member has a team that plays in the Frontier League.  Each Frontier League member helps fund a travel team that plays in the Frontier League so that there are an even number of teams to balance out the playing schedule.

Frontier League is a not-for-profit corporation organized under Ohio law and has its principal place of business in Illinois.  Frontier League's board of directors is comprised of a representative from each of the member clubs within Frontier League.  Williams is Washington Club's representative and therefore serves as a director on Frontier League's board of directors.

One of the other Frontier League members is Rock River Valley Baseball, LLC (the "Rock River Valley Club"), which is owned by W. Chris Hanners ("Hanners").  During the times relevant to this action, Bryan Wickline ("Wickline") was Rock River Valley Club's president and representative to Frontier League's board of directors.  Hanners, Wickline, and Rock River Valley Club are collectively referred to as the "Hanners Group" throughout this Order.

In early March 2014, the city of Kokomo, Indiana contacted Frontier League to discuss the possibility of placing an expansion team in Kokomo's to-be-built baseball stadium.  A few days later, Frontier League's commissioner, deputy commissioner, and one of its directors visited Kokomo and met with the mayor, director of operations, and city engineer to further discuss the opportunity.  They discussed a lease for the stadium and other related matters. A few days later, the commissioner engaged Williams in the discussions with Kokomo regarding the expansion opportunity.  The commissioner and Williams collaborated to develop a strategy for Frontier League's response to Kokomo's interest in a partnership with the Frontier League.  On March 19,

2014, Frontier League and Kokomo signed a Memorandum of Understanding ("MOU"), which gave both parties the exclusive opportunity to gather more information and conduct further negotiations with one another.  The MOU expired by its own terms on May 18, 2014.

Before the expiration of the MOU, the Kokomo expansion opportunity was discussed at Frontier League's board of directors meeting held in Florida on March 25, 2014.  At the meeting, the directors, including Wickline of the Rock River Valley Club and Williams, confirmed that the Kokomo expansion opportunity was a Frontier League opportunity.  The directors agreed that Clint Brown ("Brown"), owner of the member club in Florence, Kentucky, would pursue the Kokomo expansion opportunity on behalf of Frontier League and its members under the umbrella of the March 19, 2014 MOU.  However, by mid-June 2014, after the expiration of the MOU, Brown withdrew from the negotiations between Frontier League and Kokomo, and Williams alleges that he became Frontier League's sole authorized representative to pursue the Kokomo expansion opportunity on behalf of Frontier League.

While Brown was having discussions with Kokomo about the expansion opportunity, the Hanners Group was discussing the Kokomo expansion opportunity with Zimmerman.  On June 2, 2014, after the MOU had expired, Hanners, through the Rock River Valley Club, entered into a memorandum of understanding with Zimmerman regarding pursuing the Kokomo expansion opportunity.  While Williams's efforts with Kokomo were in progress, he learned that the Hanners Group was working with the Zimmerman Defendants in attempting to secure a lease agreement with Kokomo for the expansion opportunity.

After the MOU had expired, Frontier League's attorney, Thomas Ysursa ("Ysursa"), wrote to the Hanners Group on July 2, 2014, asserting that the Kokomo expansion opportunity was an opportunity for Frontier League to pursue and that the Hanners Group should not take any further

3

action regarding the opportunity in Kokomo or such action would be considered a breach of their fiduciary duties to Frontier League and its members.  Ysursa acknowledged receiving an email and draft lease agreement for the Kokomo stadium from the Hanners Group and the Zimmerman Defendants.  He noted that the Hanners Group should "take no further action of any kind in relation to Kokomo until such time as you provide the League an opportunity to review the lease and you provide an update to the Executive Committee as to the state of your negotiations and your intentions with Kokomo."  (Filing No. 36 at 7.)

The Hanners Group and the Zimmerman Defendants continued in their negotiations to secure the Kokomo expansion opportunity, so Ysursa wrote to the Hanners Group again on July 8, 2014. He proposed an agreement to Hanners Group in which Frontier League and the Rock River Valley Club would execute a mutual release through which Frontier League would waive any claims against Hanners Group for interfering with any business expectancy interests and for breach of fiduciary duties.  Under the terms of the proposal, Frontier League would negotiate the terms of the final lease with Kokomo, the lease would be in the name of a new entity, not the Rock River Valley Club or Frontier League, and the new entity would consist of Frontier League members that desired to invest in the Kokomo expansion opportunity.

On July 11, 2014, MKE Baseball, LLC, one of Zimmerman's entities, executed a lease with Kokomo for a baseball opportunity in Kokomo. The lease was assignable by MKE Baseball, LLC to any limited liability company in which Hanners or Zimmerman was a majority owner. After securing the lease with Kokomo, Zimmerman used the lease as leverage to try to gain membership in the Frontier League, but his request was denied by the board of directors.

After Zimmerman was denied membership in the Frontier League, he was named the chief executive officer of the Rock River Valley Club, making him an officer of a Frontier League

member team.  MKE Sports, another of Zimmerman's entities, entered a managed services agreement with the Rock River Valley Club, which allowed MKE Sports to control and operate the Rock River Valley Club, a Frontier League team.  Zimmerman publicly announced that he was partnering with Hanners to buy and manage numerous minor league baseball teams.

On September 2, 2014, Zimmerman revealed that he was bringing a team from the Prospect League, a competitor of Frontier League, to Kokomo to play at the stadium covered by the Kokomo lease.  The bylaws of Frontier League prohibit officers or owners of Frontier League member teams from owning, controlling, or operating another baseball team in the Frontier League or in any other baseball league unless approved by two-thirds of Frontier League's members.  Wickline assisted the Zimmerman Defendants in bringing a Prospect League team to Kokomo in violation of fiduciary duties, and Hanners is involved in owning or operating the Prospect League team in Kokomo in violation of his fiduciary duties and Frontier League's bylaws.

Because Frontier League did not secure the Kokomo expansion opportunity, "the League members, and therefore the League itself, must continue incurring the significant costs associated with funding the travel team[, and] . . . the League and its members lost the fair market value of the Kokomo opportunity . . . [and] the $50,000 expansion fee."  (Filing No. 36 at 9–10, ¶¶ 34, 35, 37.)

Washington Club made two demands on Frontier League to bring this action on its own behalf.  The first demand was an August 20, 2014 letter to Frontier League's executive committee, explaining the damages Frontier League had already incurred as a result of the conduct of the Hanners Group and the Zimmerman Defendants and demanding the initiation of its own legal action against the Zimmerman Defendants.  The demand requested that the executive committee convene to discuss the demand.  Washington Club made a second demand sixteen days later

through a letter dated September 5, 2014. This second letter addressed additional damages to Frontier League resulting from Kokomo and Zimmerman's announcement that a Prospect League team would be based in Kokomo. Washington Club demanded that Frontier League consider taking its own action against the Zimmerman Defendants and at least have the executive committee meet as a precursor to further action.

Less than three months after the first demand, on November 14, 2014, Washington Club and Williams filed this lawsuit before Frontier League provided a response to the demands. The complaint alleged claims for civil conspiracy to breach fiduciary duties, tortious interference, and unjust enrichment against the Zimmerman Defendants.[1] On January 13, 2015, the Zimmerman Defendants filed their Motion to Dismiss, and on January 26, 2015, Frontier League filed its Motion to Dismiss.

On February 3, 2015, Frontier League issued a report from its executive committee wherein it considered, addressed, and rejected Washington Club's demands. Soon thereafter, on February 6, 2015, Washington Club and Williams filed their Amended Complaint (Filing No. 36) to address the alleged deficiencies raised in the motions to dismiss. On February 20, 2015, the Zimmerman Defendants and Frontier League filed their second round of motions to dismiss. Because of the filing of the Amended Complaint and a second round of motions to dismiss, the Court denied as moot the Zimmerman Defendants' first round of motions to dismiss.

---

[1] Under Frontier League's bylaws, the Frontier League commissioner has jurisdiction over Washington Club's claims against the Hanners Group. Thus, on August 27, 2014, Washington Club filed a complaint with the commissioner against the Hanners Group for breach of their fiduciary duties to Frontier League and violations of Frontier League's bylaws.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> [T]he record under 12(b)(6) is limited to the language of the complaint and to those matters of which the court may take judicial notice. The complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss. By the same token, the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter

> the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth
> by the complaint, is without legal consequence.

*Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987) (citation omitted). However, "[courts] consider documents attached to the complaint as part of the complaint itself. Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citations omitted). Additionally, the court may consider documents that are referred to in the complaint and that are concededly authentic and central to the plaintiff's claim. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012). When a party attaches exhibits to its complaint and incorporates the exhibits into the pleadings, if there are contradictions between the exhibits and the complaint, the exhibits generally will control. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Dismissal is appropriate "when a party has included in its complaint 'facts that establish an impenetrable defense to its claims.'" *Hecker*, 556 F.3d at 588 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)). "A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits. . . . If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." *Id.* (quoting *Tamayo*, 526 F.3d at 1086). While "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses," if the complaint "nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)).

In a derivative action, the complaint must be verified and plead certain allegations with specificity. *See* Fed. R. Civ. P. 23.1. The complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of" and "that the action is not a

collusive one to confer jurisdiction that the court would otherwise lack." Fed. R. Civ. P. 23.1.  A derivative action complaint must "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).  Additionally, the plaintiff must "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a).

### III.  DISCUSSION

Frontier League and the Zimmerman Defendants have requested dismissal of this action based on the Plaintiffs' failure to meet the Rule 23.1 pleading requirements, a lack of standing, improper venue, the business judgment rule, and failure to state a claim upon which relief can be granted.  The Court will address the Defendants' motions in turn.

The Court first notes that Washington Club and Williams do not allege an injury independent of or beyond that which they claim they have suffered as a result of not securing the Kokomo lease and the associated lost opportunities with placing a Frontier League team in Kokomo.  Therefore, any claims for a civil conspiracy to breach fiduciary duties, tortious interference, or unjust enrichment based on the relationship among Washington Club, Williams, and Frontier League are not sufficiently pled to state a claim for relief.  The pleadings seek relief based on the potential business opportunities with expanding into the Kokomo market, not on the relationship among Washington Club, Williams, and Frontier League.

### A.    Frontier League's Motion to Dismiss

Frontier League asserts that the derivative claims in the Amended Complaint must be dismissed because the Amended Complaint does not state with particularity the efforts made by Washington Club and Williams to obtain the desired action from the directors and the reasons for

Washington Club and Williams not obtaining the action or the reasons for not making the effort of a demand.  Frontier League further asserts that the derivative claims must be dismissed because Washington Club and Williams do not fairly and adequately represent the interests of the other members of Frontier League.  On these two bases, Frontier League explains that Washington Club and Williams lack standing to assert the derivative claims in the Amended Complaint.  Frontier League also relies on the "business judgment rule" in its Motion to Dismiss.

"[C]omplaining shareholders must (1) spell out the efforts made to have the directors or the other shareholders take the action demanded, (2) explain why they failed in this effort or did not make it, and (3) show that they 'fairly and adequately' represent the interests of other shareholders 'similarly situated.'"  *Weston v. Weston Paper & Mfg. Co.*, 658 N.E.2d 1058, 1060 (Ohio 1996); *see also* Fed. R. Civ. P. 23.1, Ohio R. Civ. P. 23.1.  Failure to meet these requirements is a bar to any derivative action because failure to comply with Rule 23.1 results in a lack of standing to bring derivative claims.  *Auletta v. Ortino (In re Ferro Corp. Derivative Litig.)*, 511 F.3d 611, 617 (6th Cir. 2008).

A corporation's directors have the primary authority to file a lawsuit on behalf of the corporation, and the shareholders may make a demand on the directors to bring a suit on behalf of the corporation.  However, shareholders do not have an independent right to bring suit unless the directors refuse to do so and that refusal is wrongful, fraudulent, arbitrary, or is the result of bad faith or bias on the part of the directors.  *Drage v. P&G*, 694 N.E.2d 479, 482 (Ohio Ct. App. 1997).  An exception to this general demand rule allows a shareholder to bring a derivative action without making a demand if the shareholder can demonstrate that a demand would have been futile.

In this case, Washington Club and Williams acknowledge that "Washington Club is not proceeding on futility grounds." (Filing No. 49 at 12.) Therefore, to maintain their derivative claims, Washington Club and Williams must state with particularity in their Amended Complaint the efforts they have taken to obtain the desired action from the directors and the reasons for not obtaining that action.

In the Amended Complaint, it is alleged that Washington Club made two demands on Frontier League to bring this action on its own behalf. On August 20, 2014, Washington Club sent a letter to Frontier League's executive committee, explaining the damages Frontier League had already incurred as a result of the conduct of the Hanners Group and the Zimmerman Defendants and demanding the initiation of its own action against the Zimmerman Defendants. The demand also requested that the executive committee convene to discuss the demand. Sixteen days later, on September 5, 2014, Washington Club sent a second letter addressing additional damages to Frontier League resulting from Kokomo and Zimmerman's announcement that a Prospect League team would be based in Kokomo. In the second letter, Washington Club demanded that Frontier League consider taking its own action against the Zimmerman Defendants and at least have the executive committee meet as a precursor to further action.

Less than three months after the first demand, on November 14, 2014, Washington Club and Williams filed this lawsuit before Frontier League completed its investigation and provided a response to the demands. On January 13 and 26, 2015, the Defendants filed motions to dismiss, which included the argument regarding the demand requirement. On February 3, 2015, Frontier League issued a report stating it considered, addressed, and rejected Washington Club's demands. Then on February 6, 2015, Washington Club and Williams filed their Amended Complaint.

Washington Club and Williams assert that "plaintiffs filed this lawsuit on November 14, 2014 after the League's board of directors and its Executive Committee failed or refused to convene to consider the Washington Club's demands and failed to issue any response to the Washington Club's demands." (Filing No. 36 at 13.)  Frontier League asserts that this is not enough to satisfy the demand requirement for derivative actions.  However, after this action was initiated, Frontier League issued its February 3, 2015 report wherein it rejected Washington Club's demands. Then Washington Club and Williams filed their Amended Complaint with Frontier League's refusal in hand.  Therefore, in this case, there have been two demands, a refusal of those demands, and an Amended Complaint that alleges facts concerning the demands and refusal.

Washington Club and Williams next must allege why they failed in their effort to obtain the requested action in the demands and that Frontier League's refusal was wrongful, fraudulent, arbitrary, or the result of bad faith or bias on the part of the directors.

Washington Club and Williams allege that Frontier League's February 3, 2015 report "is a self-serving whitewash designed to conceal the bias and conflicts of interest on the part of the League," that other Frontier League members were violating their fiduciary duties regarding the Kokomo opportunity, and that the "League's conduct in stonewalling the League Complaint and refusing to accept the Washington Club's demand has not been in good faith and for the benefit of the League; instead, it is to protect and preserve self-interested parties who apparently independently breached the fiduciary duties they owed to the League and its members." (Filing No. 36 at 13–14.)

The allegations in the Amended Complaint explain that members of Frontier League were violating their fiduciary duties to Frontier League and its other members and that these violations and conflicts of interest caused the refusal of Washington Club's and Williams's demands.  The

Amended Complaint explains that Frontier League's refusal was the result of bias on the part of the directors because of their self-interest. These allegations are sufficient at the motion to dismiss stage.

Finally, it must appear that Washington Club and Williams fairly and adequately represent the interests of the other members of Frontier League. The Amended Complaint alleges that this is the case. Frontier League argues that Washington Club and Williams cannot fairly and adequately represent the interests of Frontier League because they stood to personally gain from securing the Kokomo opportunity themselves. Washington Club and Williams respond that Frontier League's argument ignores the allegations in the Amended Complaint that Frontier League considered the Kokomo opportunity to be a Frontier League opportunity, not an opportunity for just a single member, and that each of the Frontier League members would benefit from the addition of a team in Kokomo, the payment of an expansion fee, and the value of the new team for any member who invested in the team. At this stage of the litigation, it appears that Washington Club and Williams will fairly and adequately represent the interests of Frontier League and its other members.

As an additional basis to dismiss the derivative claims, Frontier League relies on the business judgment rule and argues that, in its business judgment, it has decided not to pursue the derivative claims and requests dismissal of those claims. The business judgment rule "is a rebuttable presumption that directors are better equipped than the courts to make business judgments and that the directors acted without self-dealing or personal interest and exercised reasonable diligence and acted in good faith." *Marsalis v. Wilson*, 778 N.E.2d 612, 615–16 (Ohio Ct. App. 2002). Frontier League asserts that the Amended Complaint does not allege facts with sufficient particularity to overcome the presumption of the business judgment rule.

In response, Washington Club and Williams point out that any matters involving the business judgment rule do not have to be pled with heightened specificity, relying on *Marsalis*, 778 N.E.2d at 616.  When a breach of a fiduciary duty is alleged, "the business judgment rule would impose on Plaintiffs a burden at trial to present evidence to rebut the presumption the rule imposes.  However, Plaintiffs are not likewise obligated to plead operative facts in their complaint that would rebut the presumption."  *Id.*  They point out the allegations in the Amended Complaint that assert the self-interest, bias, and conflicts of interests at play in the board of directors and the executive committee that overcome the business judgment presumption.  When considering the Motion to Dismiss, the Court must accept as true all factual allegations in the Amended Complaint and view them in a light most favorable to the Plaintiffs.  In doing so, the Amended Complaint sufficiently pleads facts of self-interest, bias, and conflicts of interest to overcome the business judgment presumption.

In making its business judgment argument, Frontier League also asserts that it determined Frontier League did not sustain sufficient damages to justify litigation.  However, it relies on facts that are not contained in the pleadings, and the Court considers the Motion to Dismiss by looking at whether the Amended Complaint has a sufficient factual basis.  The parties cannot change the factual allegations of the complaint with their briefing.  In the Amended Complaint, Washington Club and Williams alleged three categories of damages sustained by Frontier League and its members.  Again, the Court must accept as true all factual allegations in the Amended Complaint and view them in a light most favorable to the Plaintiffs, and in doing so, the Amended Complaint is sufficient to overcome the business judgment presumption at this stage of the litigation.

Accepting the factual allegations as true and viewing them in a light most favorable to Washington Club and Williams, the Amended Complaint presents sufficient allegations to support

14

a derivative action by the Plaintiffs on behalf of nominal defendant Frontier League. However, as will be discussed below, the substantive, underlying claims cannot survive dismissal. The derivative aspect of the Amended Complaint is inseparable from, united with, and identical to the substantive, underlying claims. Because the derivative aspect of the Amended Complaint goes hand-in-hand with the underlying claims and the substantive, underlying claims cannot survive dismissal, the derivative action involving Frontier League must be dismissed also.

**B.**      **The Zimmerman Defendants' Motion to Dismiss**

In their Motion to Dismiss, the Zimmerman Defendants seek the dismissal of this action based on improper venue, derivative pleading deficiencies, and failure to state a claim for which relief can be granted as to the substantive, underlying claims.

The Zimmerman Defendants first seek dismissal based on improper venue. They claim that the action should be dismissed or, alternatively, transferred to the district court in Wisconsin where they reside. They assert that there is no substantial part of the events giving rise to the claim that occurred in Indiana, and there is no close nexus between the claims and this district. However, as the Court already has noted, the pleadings seek relief based on the potential business opportunities in Kokomo, Indiana. Therefore, the Court declines the invitation to transfer this action to a different venue and will not dismiss the action on this basis.

Next, the Zimmerman Defendants seek dismissal based on deficiencies in pleading the derivative claims. They advance the same arguments asserted by Frontier League regarding the insufficiency of the derivative pleadings. For the reasons already discussed, this argument does not warrant dismissal.

Lastly, the Zimmerman Defendants seek dismissal based on Washington Club's and Williams's failure to state claims for which relief can be granted as to the substantive, underlying

claims alleged in the Amended Complaint.  Those claims are civil conspiracy to breach fiduciary duties, tortious interference, and unjust enrichment.

### 1.    <u>Civil Conspiracy to Breach Fiduciary Duties</u>

The Zimmerman Defendants assert that the claim for civil conspiracy to breach fiduciary duties must be dismissed because such a claim likely is not recognized in Indiana, and even if the claim is recognized, the Amended Complaint fails to allege facts necessary to support the claim. They rely on *DiMaggio v. Rosario*, 950 N.E.2d 1272 (Ind. Ct. App. 2011), which affirmed a 12(b)(6) dismissal on grounds that the complaint failed to sufficiently allege elements and facts of a claim for third-party, non-fiduciary aiding and abetting a fiduciary in breach of their duty.  There, the court did not decide whether Indiana recognized or should adopt such a cause of action.  *Id.* at 1276.

In a more recent decision from the Indiana Court of Appeals, relying on *DiMaggio*, the court stated, "Indiana does not recognize such a cause of action. . . . We believe that the decision to adopt a new cause of action for aiding and abetting in the breach of fiduciary duty is a decision better left to the legislature or our supreme court."  *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 656 (Ind. Ct. App. 2014).

In contrast to *Crystal Valley Sales* and *DiMaggio*, district courts from this District and the Northern District of Indiana have suggested that a claim for aiding and abetting another party's breach of its fiduciary duty is recognized in Indiana.  *See Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, 2004 U.S. Dist. LEXIS 6277, at *36 (S.D. Ind. Mar. 24, 2004) (holding that dismissal of claim is unwarranted and explaining that "[t]here are very few cases on point in Indiana, but it appears from the cases that do exist that a non-fiduciary can be liable for aiding and abetting another party's breach of its fiduciary duty"); *Abrams v. McGuireWoods, LLP*, 518 B.R. 491, 500

16

(N.D. Ind. 2014) ("there is some Indiana precedent, albeit with a thick layer of dust on it, that at least suggests Indiana does recognize liability for aiding and abetting another party's breach of fiduciary duty," and "despite the fact that there is no Indiana case expressly recognizing liability for aiding and abetting breach of fiduciary duty, I think it likely that an Indiana court would allow this claim to go forward").  Both *Baker O'Neal Holdings* and *Abrams* rely on the early decision from the Indiana Court of Appeals of *Sharts v. Douglas*, 163 N.E. 109 (Ind. Ct. App. 1928).  In *Sharts*, the court allowed a claim against a third-party, "non-fiduciary" for aiding and abetting a trustee in breaching his duties.  *Id.* at 112 ("It is also the law that a third party who has aided and abetted the trustee in carrying out the fraudulent scheme may be joined as defendant in the same action.").

While Indiana may recognize a claim against a third-party, non-fiduciary for aiding and abetting another party's breach of its fiduciary duty, the Amended Complaint in this case is deficient in pleading such a claim.  This claim would require that the fiduciary breach its duty, that the third-party, non-fiduciary knowingly and substantially assist in the breach, and that the third-party, non-fiduciary be aware of its role when providing the assistance.  *Fifth Third Bank v. Double Tree Lake Estates, LLC*, 2014 U.S. Dist. LEXIS 99758, at *34 (N.D. Ind. July 23, 2014).  Further, "such a tort [would] require that the nonfiduciary act knowingly or intentionally when joining the fiduciary in an enterprise constituting a breach of fiduciary duty."  *Crystal Valley Sales, Inc.*, 22 N.E.3d at 656.  In *Crystal Valley Sales*, the court determined that the allegations were insufficient to state a claim for aiding and abetting a breach of fiduciary duties because the complaint did not allege that the defendants acted with knowledge or intent concerning the fiduciary's duties to the company.  The complaint failed to allege any knowledge of the defendants concerning the co-conspirator fiduciary's duties as a shareholder of the company.  *Id.*

17

Likewise, in this case, Washington Club and Williams have failed to state a claim for aiding and abetting a breach of fiduciary duties.  They have alleged in their Amended Complaint that the "Zimmerman Defendants acted in concert with the Hanners Group in the breach of the Hanners Group's fiduciary duties to the League, its members and its directors."  (Filing No. 36 at 15.) However, the Amended Complaint does not allege that the Zimmerman Defendants had knowledge of the Hanners Group's fiduciary duties to Frontier League and its members, and it does not allege that the Zimmerman Defendants knowingly and intentionally assisted the Hanners Group in breaching their duties.

The factual allegations in the Amended Complaint explain that Frontier League's attorney wrote to the Hanners Group, not to the Zimmerman Defendants, to demand that they stop any efforts to secure the opportunity in Kokomo.  There are no allegations that Frontier League's attorney contacted the Zimmerman Defendants regarding standing down or stopping with efforts to aid and abet the Hanners Group in breaching their fiduciary duties.  There is nothing in the Amended Complaint to indicate that the Zimmerman Defendants knew about the Hanners Group's fiduciary duties or knowingly and intentionally assisted the Hanners Group in breaching those duties.  Thus, even if Indiana does recognize such a claim, the Amended Complaint fails to allege facts to support a claim for civil conspiracy to breach fiduciary duties.

### 2.    Tortious Interference with a Business Relationship

Next, the Zimmerman Defendants assert that the claim for tortious interference with a business relationship must be dismissed because there are no facts supporting a business relationship between Frontier League and Kokomo or Washington Club, Williams, and Kokomo. Additionally, there are no allegations of illegal conduct on the part of the Zimmerman Defendants.

"In Indiana, an action for tortious interference with business relationships has five elements:   the existence of a valid business relationship; the defendant's knowledge of the existence of the relationship; the defendant's intentional interference in the relationship; the absence of any justification; and, damages resulting from the defendant's interference." *Comfax Corp. v. North Am. Van Lines*, 587 N.E.2d 118, 124 (Ind. Ct. App. 1992).   "Another element which is discussed with regard to proof of this cause of action is that a defendant acted illegally in achieving his end."  *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 876 (Ind. Ct. App. 1998). The parties dispute whether this "illegal conduct of the defendant" element is necessary to the claim.  However, this dispute is immaterial to resolving the issues in this case.

The Court determines that this claim must be dismissed because the allegations in the Amended Complaint show that there was no existing, valid business relationship with which the Zimmerman Defendants could have interfered.  Washington Club and Williams assert that they had a prospective business relationship with Kokomo and that they adequately alleged that relationship in the Amended Complaint.   However, the claim fails in this case because the "relationship" alleged is a prospective opportunity to enter into a business relationship with Kokomo, not a valid, existing business relationship with Kokomo.  The necessity of an existing business relationship is highlighted in one of the cases on which Washington Club and Williams rely.   The Indiana Court of Appeals affirmed dismissal on summary judgment because the "counterclaim fails to state any facts which would show that [the counter-defendant] interfered with [the counter-plaintiff's] business relationships with any third parties, beyond bald assertions of possible business opportunities." *Comfax*, 587 N.E.2d at 124.

Regarding any potential business relationship between Frontier League and Kokomo, the Amended Complaint shows that no business relationship actually existed between them beyond

the MOU that gave them an exclusive opportunity to gather more information and conduct further negotiations with one another.  However, the MOU expired by its own terms on May 18, 2014, and the actions of the Zimmerman Defendants occurred after the expiration of the MOU.

Because the allegations in the Amended Complaint show that there was no existing, valid business relationship with which the Zimmerman Defendants could have interfered, this claim must be dismissed.

### 3.   **Unjust Enrichment**

The Zimmerman Defendants explain that the claim for unjust enrichment must be dismissed because there are no facts to support an "actual wrong or misleading conduct" by the Zimmerman Defendants.  Washington Club and Williams respond by simply stating that "the plaintiffs allege that the Zimmerman Defendants conspired with the Hanners Group and tortiously interfered with certain prospective business relationships in the myriad of ways set forth above," which shows an "actual wrong or misleading conduct."  (Filing No. 49 at 10.)

"To recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust."  *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012).  Thus, the plaintiff must confer some benefit upon the defendant, and allowing the defendant to retain the benefit without any compensation to the plaintiff would be unjust.

The Amended Complaint is devoid of any allegations that Frontier League, Washington Club, or Williams conferred a benefit on the Zimmerman Defendants.  There are no allegations that the Zimmerman Defendants explicitly or implicitly requested a benefit from Frontier League, Washington Club, or Williams.  Therefore, the unjust enrichment claim must also be dismissed.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Zimmerman Defendants' and Frontier League's Motions to Dismiss (Filing No. 39; Filing No. 41).  The determination now is whether the dismissals should be with or without prejudice.  The Court notes that Plaintiffs' have previously amended the complaint in this matter.  A court should "freely give leave [to file an amended complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Moreover, dismissal with prejudice is appropriate where an amendment would be futile.  Accordingly, Count II, Tortious Interference, is **dismissed with prejudice**.  However, since it is at least possible that an amendment might cure the flaws with Counts I and III, those counts are **dismissed without prejudice**.  The Plaintiffs are granted leave to file a second amended complaint with respect to Counts I and III, **within fourteen (14) days of the date of this Order**.  If no such amendment is filed, the Court will convert the dismissal to one with prejudice so that a final appealable judgment can be issued.

      **SO ORDERED.**

Date: 11/18/2015

_Tanya Walton Pratt_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Jacques C. Condon
CONDON LAW FIRM LLC
jacques@condon-law.com

Jay Jaffe
FAEGRE BAKER DANIELS LLP
jay.jaffe@FaegreBD.com

Nathaniel L. Swehla
GRAYDON HEAD RITCHEY
nswehla@graydon.com

Kevin L. Murphy
KEVIN L. MURPHY PLLC
klmurphy@kevinlmurphylaw.com