# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WASHINGTON FRONTIER LEAGUE | ) | |
| BASEBALL, LLC, and STUART A. WILLIAMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-01862-TWP-DML |
| | ) | |
| MICHAEL E. ZIMMERMAN, | ) | |
| MKE BASEBALL, LLC, | ) | |
| MKE SPORTS & ENTERTAINMENT, | ) | |
| LLC, FRONTIER PROFESSIONAL | ) | |
| BASEBALL, INC., W. CHRIS HANNERS, | ) | |
| BRYAN WICKLINE and JOSHUA E. SCHAUB, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS TO DISMISS

This matter is before the Court on Motions to Dismiss filed by Defendants Michael E. Zimmerman ("Zimmerman"), MKE Baseball, LLC and MKE Sports & Entertainment, LLC (collectively, "the Zimmerman Defendants") (Filing No. 80), Defendant Joshua E. Schaub ("Schaub") (Filing No. 95), and Defendants W. Chris Hanners ("Hanners") and Bryan Wickline ("Wickline") (Filing No. 103). This is the third round of motions to dismiss in this derivative action lawsuit filed by Plaintiffs Washington Frontier League Baseball, LLC ("Washington Club") and Stuart A. Williams ("Williams") after the Zimmerman Defendants secured a baseball expansion opportunity that Washington Club and Williams had been pursuing. For the following reasons, the Court grants in part and denies in part the Zimmerman Defendants' motion, grants Schaub's motion, and denies Hanners and Wickline's motion.

# I. BACKGROUND

The following facts are not necessarily objectively true; but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Second Amended Complaint and draws all inferences in favor of Washington Club and Williams.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Williams, his wife, and another investor are the owners of Washington Club, which is a member club in the Frontier League.  Frontier League is an independent, professional baseball league with thirteen teams.  Each Frontier League member has a team that plays in the Frontier League.  Each Frontier League member helps fund a travel team that plays in the Frontier League so that there are an even number of teams to balance out the playing schedule.

Frontier League is a not-for-profit corporation organized under Ohio law and has its principal place of business in Illinois.  Frontier League's board of directors is comprised of a representative from each of the member clubs within Frontier League.  Williams is Washington Club's representative and therefore serves as a director on Frontier League's board of directors.

One of the other Frontier League members is Rock River Valley Baseball, LLC (the "Rock River Valley Club"), which is owned by Hanners. Wickline was Rock River Valley Club's president and representative on Frontier League's board of directors.  Schaub was the owner or managing member of another Frontier League member, the Joliet Slammers, and he was the director for that member team on Frontier League's board of directors.

In early March 2014, the City of Kokomo, Indiana contacted Frontier League to discuss the possibility of placing an expansion team in Kokomo's to-be-built baseball stadium.  On March 10, 2014, Frontier League's Commissioner Bill Lee, assistant commissioner Steve Tahsler, and one of Frontier League's directors, Steve Malliet, visited Kokomo and met with the mayor, director

of operations, and city engineer to further discuss the opportunity.  They discussed a lease for the stadium and other related matters.

On March 11, 2014, Malliet summarized the meeting with the city officials for Frontier League's expansion committee, consisting of Schaub, Pat Salvi, and Clint Brown.  Also on March 11, Commissioner Lee summarized the meeting for Frontier League's directors.  Then on March 18, 2014, several members of Frontier League participated in a conference call to discuss the Kokomo expansion opportunity.  Hanners, Wickline, Schaub, Williams, and Malliet were among the call participants.  The consensus from the conference call was that the members would take a unified approach to the Kokomo expansion opportunity rather than bid against each other.

Commissioner Lee asked Williams to assist in preparing a Memorandum of Understanding ("MOU") with Kokomo to address the Kokomo expansion opportunity. On March 19, 2014, Commissioner Lee signed the MOU on behalf of Frontier League and Kokomo also signed the MOU, which gave both parties the exclusive opportunity to gather more information and conduct further negotiations with one another.  The MOU expired by its own terms on May 18, 2014.

Before the expiration of the MOU, the Kokomo expansion opportunity was discussed at Frontier League's board of directors meeting held on March 25, 2014.  At the meeting, the directors decided to hold off on any further discussions about who would participate in the Kokomo expansion opportunity until a lease was negotiated with Kokomo.  The directors agreed that Clint Brown ("Brown"), owner of the member club in Florence, Kentucky, would pursue the Kokomo expansion opportunity on behalf of Frontier League and its members under the umbrella of the March 19, 2014 MOU.  Williams assisted Brown whenever asked.  While Frontier League was having discussions with Kokomo about the expansion opportunity, the Defendants were discussing the Kokomo expansion opportunity for themselves.

On June 17, 2014, Brown informed Commissioner Lee that he was withdrawing from the negotiations between Frontier League and Kokomo.  Commissioner Lee called Williams and asked him to pursue the negotiations with Kokomo, and Commissioner Lee encouraged Kokomo officials to visit Pennsylvania to see the Washington Club operations.

While Kokomo officials were arranging a trip with Williams, Hanners and Wickline met with Commissioner Lee on June 18, 2014 to ask about the status of the Kokomo expansion opportunity.  Commissioner Lee told Hanners and Wickline that Williams was working on the negotiations, and they would need to talk with Williams.  On June 19, 2014, Commissioner Lee told Hanners, Wickline, and Zimmerman the same thing about Williams and Kokomo when they met to discuss placing a Frontier League team in the Milwaukee area.  Then on June 20, 2014, Kokomo Mayor Goodnight, Randy McKay ("McKay"), and other city officials visited the Washington Club operations in Pennsylvania with Williams and were excited to work with Williams.

On June 25, 2014, Wickline emailed the Kokomo city engineer, asking to set up a meeting with Hanners.  This request was without authorization from, or the knowledge of, Frontier League and conflicted with Frontier League's unified approach to the Kokomo expansion opportunity. The Kokomo city engineer forwarded the request to McKay, who coordinated a meeting with Wickline.  Wickline informed McKay that one of Hanners' partners, Zimmerman, would join them for the meeting.

On June 26, 2014, Wickline emailed McKay to let him know that Hanners would arrive for the meeting around 1:00 p.m. and Zimmerman would arrive closer to 2:00 p.m.  McKay emailed Williams to let him know that he had been contacted by a Rock River Valley Club representative and would be meeting with them to discuss a team in Kokomo.  McKay informed

Williams that he would tell them that Kokomo is working with Williams and would hopefully be entering into a lease agreement.  Williams responded with an email expressing appreciation for being informed.

Williams then immediately called Commissioner Lee and said that he would not visit Kokomo to discuss Frontier League's expansion into Kokomo unless Frontier League spoke with Hanners.  Commissioner Lee informed Williams that he was unaware of Hanners' planned meeting with Kokomo officials and that Williams should assume Hanners would not meet with Kokomo unless Commissioner Lee told Williams differently.  Commissioner Lee did not inform Williams differently.

Also on June 26, 2014, Kokomo officials met with Hanners and Zimmerman as well as Schaub to discuss the Kokomo expansion opportunity.  Hanners and Schaub brought Zimmerman into discussions with Kokomo and provided him with access and information that he otherwise would not have had.  During the meeting, McKay exchanged text messages with Commissioner Lee, which confirmed that Schaub, Hanners, and Zimmerman were meeting with Kokomo. Commissioner Lee encouraged McKay not to finalize anything until after he talked with Williams, to which McKay agreed.

On Sunday, June 29, 2014, Williams visited Kokomo.  Williams perceived that the city officials' attitude toward him had changed since their visit to his Washington Club operation.  In preparation for the June 29, 2014 visit, Williams had expressed his intention of finalizing the lease, but during his visit to Kokomo, Williams realized that McKay was not interested in discussing the lease.  Mayor Goodnight arrived late and provided a short tour of the city but did not discuss the expansion opportunity.  Then on Monday, June 30, 2014, Mayor Goodnight called Commissioner Lee to tell him that Kokomo had decided to work with Hanners and his partners.

On July 2, 2014, two days after Mayor Goodnight called Commissioner Lee, Frontier League's executive committee held a conference call to discuss the Kokomo expansion opportunity. Williams expressed his belief that the Rock River Valley Club was soon going to close on a lease with Kokomo, and he wanted the executive committee to direct the Rock River Valley Club not to enter a lease until after the executive committee could review the lease and allow other Frontier League members to join the lease.

The executive committee asked Frontier League's attorney, Thomas Ysursa ("Ysursa"), to send a letter to Hanners asking him for an update on Kokomo, informing him that he needed Frontier League's approval before a lease could be signed, and informing him that after a lease was signed a meeting would be held to determine what other members wanted to join the expansion opportunity. Before Ysursa could send the requested letter, he received an email from Zimmerman on July 2, 2014, which included a copy of the lease that was being presented to Kokomo. The proposed lease was between Kokomo and Rock River Valley Baseball, LLC. In his email, Zimmerman informed Ysursa that "[w]e understand and empathize with other owners if they are unsettled about 'the deal.'" (Filing No. 75 at 11.) Zimmerman went on in his email to invite other owners to consider entering into the expansion opportunity, which would include Kokomo and the Rock River Valley Club.

After receiving this email, Ysursa sent a letter to Hanners on July 2, 2014, asserting that the Kokomo expansion opportunity was an opportunity for Frontier League to pursue and that if Hanners failed to offer participation in the opportunity to his fellow members, he would be breaching fiduciary duties. He noted that Hanners should "take no further action of any kind in relation to Kokomo until such time as you provide the League the opportunity to review the lease

and you provide an update to the Executive Committee as to the state of your negotiations and your intentions with Kokomo." (Filing No. 75 at 11–12.)

Ysursa spoke with Hanners on July 3, 2014, and asked him to allow Frontier League to finish the lease negotiations. Hanners stated that he was agreeable but would first have to talk with his people—Zimmerman. Ysursa confirmed this conversation in a letter dated July 4, 2014. On July 7, 2014, the executive committee met to discuss a course of action that assumed Hanners would comply with Frontier League's directives and turn over the Kokomo negotiations to Frontier League. However, Hanners sent a text message to Ysursa on July 7, 2014, expressing his plan to be in Kokomo to finalize the negotiations. Zimmerman and Hanners agreed that Hanners would go to Kokomo to finalize the negotiations for the baseball opportunity there.

On July 8, 2014, Kokomo official McKay sent a text message to Commissioner Lee stating,

Bill, we have an agreement on the lease with Dr. Hanners [sic] group that will bring a team into Kokomo. There is no guarantee it will be from the Frontier League, but we certainly hope so. I am hoping things are good at your end to allow this group to obtain a team.

(Filing No. 75 at 13.) The next day, Ysursa informed Hanners that if he failed to conform to the directives of Frontier League and the by-laws and his duties, "the Frontier League will take all legal and administrative actions it deems appropriate to protect its members and interests." *Id.*

On July 11, 2014, MKE Baseball, one of Zimmerman's entities, executed a lease with Kokomo for a baseball opportunity in Kokomo. The lease was assignable by MKE Baseball to any limited liability company in which Hanners or Zimmerman was a majority owner and expressly included the Rock River Valley Club. After securing the lease with Kokomo, Hanners and Zimmerman presented several different proposals to the Frontier League members for Zimmerman's admission into Frontier League and to approve a franchise in Kokomo under Hanners' and Zimmerman's control.

Zimmerman offered to sell an interest in the Kokomo opportunity to the members of Frontier League, while at the same time acknowledging that Kokomo had always been a Frontier League opportunity.  Regarding the value of a Kokomo team, Zimmerman informed the Frontier League directors that "we estimate the fair market value of the Kokomo baseball team to be $1,000,000."  (Filing No. 75 at 14.)

On September 2, 2014, Zimmerman revealed that he was bringing a team from the Prospect League, a competitor of Frontier League, to Kokomo to play at the stadium covered by the Kokomo lease.  Hanners and Wickline assisted Zimmerman in bringing a Prospect League team to Kokomo in violation of fiduciary duties.  Hanners was involved in owning or operating the Prospect League team in Kokomo in violation of his fiduciary duties and Frontier League's by-laws.  Wickline was a director for both the Prospect League team and for a Frontier League team in violation of his fiduciary duties.  At the end of September 2014, Wickline resigned as the director of the Rock River Valley Club, a Frontier League team, and on October 17, 2014, the Prospect League announced that Wickline had been named its commissioner.

Because Frontier League did not secure the Kokomo expansion opportunity, "the League members, and therefore the League itself, incurred the significant costs associated with funding the travel team[, and] . . . the League and its members lost the fair market value of the Kokomo opportunity . . . [and] the $50,000 expansion fee."  (Filing No. 75 at 14–15.)

Washington Club made two demands on Frontier League to bring this action on its own behalf.  The first demand was an August 20, 2014 letter to Frontier League's executive committee, explaining the damages Frontier League had already incurred as a result of the conduct of Hanners, Wickline, and the Zimmerman Defendants and demanding the initiation of its own legal action against the Zimmerman Defendants.  The demand requested that the executive committee convene

to discuss the demand.  Washington Club made a second demand sixteen days later through a letter dated September 5, 2014.  This second letter addressed additional damages to Frontier League resulting from Kokomo and Zimmerman's announcement that a Prospect League team would be based in Kokomo.  Washington Club demanded that Frontier League consider taking its own action against the Zimmerman Defendants and at least have the executive committee meet as a precursor to further action.

On November 14, 2014, Washington Club and Williams filed this lawsuit before Frontier League provided a response to the demands.  The initial complaint alleged claims for civil conspiracy to breach fiduciary duties, tortious interference with a business relationship, and unjust enrichment against the Zimmerman Defendants.  On January 13, 2015, the Zimmerman Defendants filed a motion to dismiss, and on January 26, 2015, Frontier League filed a motion to dismiss.

On February 3, 2015, Frontier League issued a report from its executive committee wherein it considered, addressed, and rejected Washington Club's demands.  Soon thereafter, on February 6, 2015, Washington Club and Williams filed their first amended complaint to address the alleged deficiencies raised in the motions to dismiss.  On February 20, 2015, the Zimmerman Defendants and Frontier League filed their second round of motions to dismiss.  Because of the filing of the first amended complaint and a second round of motions to dismiss, the Court denied as moot the Defendants' first round of motions to dismiss.

On November 18, 2015, the Court granted the Defendants' second round of motions to dismiss, dismissing with prejudice the claim for tortious interference with a business relationship and granting leave to amend the complaint for the claims of civil conspiracy to breach fiduciary duties and unjust enrichment (Filing No. 73 at 21).  On December 2, 2015, Washington Club and

Williams filed their Second Amended Complaint, asserting claims for breach of fiduciary duty and civil conspiracy to breach fiduciary duties against the Zimmerman Defendants, Schaub, Hanners, and Wickline (Filing No. 75).   On December 16, 2015, the Zimmerman Defendants filed their Motion to Dismiss (Filing No. 80), and Schaub filed his Motion to Dismiss on January 6, 2016 (Filing No. 95).  Hanners and Wickline filed their Motion to Dismiss on February 3, 2016 (Filing No. 103).

## II.  LEGAL STANDARDS

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff.  *Bielanski*, 550 F.3d at 633.  However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact."  *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level."   550 U.S. 544, 555 (2007).   Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient.  *Id.*  The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.*  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted).  To be

facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> [T]he record under 12(b)(6) is limited to the language of the complaint and to those matters of which the court may take judicial notice. The complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss. By the same token, the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence.

*Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987) (citation omitted). However, "[courts] consider documents attached to the complaint as part of the complaint itself. Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citations omitted). Additionally, the court may consider documents that are referred to in the complaint and that are concededly authentic and central to the plaintiff's claim. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012). When a party attaches exhibits to its complaint and incorporates the exhibits into the pleadings, if there are contradictions between the exhibits and the complaint, the exhibits generally will control. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

**B.**    **Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc*., 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co*., 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding

11

whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted).  Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

**C.**     **Rule 12(b)(3)**

"When considering a motion to dismiss, the district court ordinarily assumes the truth of all well-pleaded allegations in the plaintiff's complaint.  But this rule is less absolute when considering a motion to dismiss under Federal Rule 12(b)(3) than under Rule 12(b)(6)." *Deb v. Sirva, Inc.*, 2016 U.S. App. LEXIS 14803, at *15 (7th Cir. Aug. 11, 2016) (citations omitted). "Under Rule 12(b)(3), which allows for dismissal for improper venue, the district court assumes the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits." *Id.*  "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Id.* at *16.  "It is appropriate, then, for [the court] to consider the evidence submitted with the motion." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011).  Furthermore, "we have held that a motion to dismiss based on a contractual arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)." *Id.* at 807.

# III. <u>DISCUSSION</u>

The Zimmerman Defendants move for dismissal under Rule 12(b)(6), asserting that the Second Amended Complaint is deficient in pleading plausible claims, and procedural shortcomings prohibit a new claim against Zimmerman. Schaub requests dismissal under Rules 12(b)(1) and 12(b)(6), explaining that this Court lacks subject matter jurisdiction over him because Frontier League's by-laws provided Commissioner Lee with original jurisdiction over the dispute, and that procedure never was utilized as to Schaub. Finally, Hanners and Wickline seek dismissal under Rule 12(b)(3) on the basis that Frontier League's by-laws provided the exclusive procedure for resolving this dispute, and thus this Court is the improper venue to determine their alleged liability. The Court will address each Motion to Dismiss in turn.

## A.      <u>The Zimmerman Defendants' Motion to Dismiss (Filing No. 80)</u>

The Zimmerman Defendants assert that Count I of the Second Amended Complaint—breach of fiduciary duty—must be dismissed against them because the claim was never pled in the two prior complaints, the Zimmerman Defendants never consented to an amendment to add a new claim, and the Court never granted leave to amend to add new claims. As to the sufficiency of the pleading of the claim, the Zimmerman Defendants assert that, in order for a breach of fiduciary duty claim to have any plausibility, the defendant must be a fiduciary, and the Frontier League never recognized the Zimmerman Defendants as members or directors or in any other way a part of Frontier League. Thus, the Zimmerman Defendants never could have owed fiduciary duties to Frontier League.

Responding to the Zimmerman Defendants' argument concerning procedure, Washington Club and Williams assert that they received permission from the Court to amend their complaint in the Court's previous Order on Motions to Dismiss. That Order stated that the plaintiffs were

granted leave to amend their complaint as to the claims of civil conspiracy to breach fiduciary duties and unjust enrichment (Filing No. 73 at 21).  Washington Club and Williams explain that the claim for breach of fiduciary duties is not "new," but rather, it arises from the same facts and necessarily underlies the original claim for civil conspiracy to breach fiduciary duties.

Because the Court granted leave to the plaintiffs to amend their complaint, and because the claim arises from the same set of facts and is closely related to the original claim for civil conspiracy to breach fiduciary duties, the Court determines that the Zimmerman Defendants' procedural challenge to the breach of fiduciary duties claim does not warrant dismissal of the claim.

Regarding the sufficiency of the pleading of the claim, there must be factual allegations to support a fiduciary relationship, the existence of fiduciary duties, breach of fiduciary duties, and some injury proximately caused by the breach.  *See Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013).  The Zimmerman Defendants assert that they never were fiduciaries to Frontier League, and thus, they had no duties that could be breached.

Washington Club and Williams acknowledge the outsider nature of the Zimmerman Defendants in their pleadings:  "After securing the Lease, Hanners and Zimmerman persisted in their defiant behavior by presenting several different proposals to members for Zimmerman's admission into the League." (Filing No. 75 at 13 ¶64.)  As the Court noted in the previous Order on Motions to Dismiss, Frontier League rejected Zimmerman's attempts to become a part of Frontier League (Filing No. 73 at 4).  Thus, through the point in time when the lease was secured for the Kokomo expansion opportunity and sometime shortly thereafter, the Zimmerman Defendants were not members, directors, or officers within Frontier League, and therefore could not have owed any fiduciary duties to Frontier League.

However, as the Court noted in the previous Order on Motions to Dismiss, as Washington Club and Williams had alleged, Zimmerman was appointed the chief executive officer of the Rock River Valley Club, making him an officer of a Frontier League member team (Filing No. 73 at 4– 5).  The Second Amended Complaint also alleges that "Zimmerman and MKE Sports [became] de facto owners and in control of the Rock River Valley Club[, which] gave rise to the same fiduciary duties of loyalty and good faith and fair dealing owed by all other members and directors of the League."  (Filing No. 75 at 5 ¶23.)  At this stage of the proceedings, the Court accepts as true the factual allegations, and Zimmerman could have owed fiduciary duties to Frontier League once he became an officer of a Frontier League member team.

As noted in the Court's previous Order on Motions to Dismiss, "the bylaws of Frontier League prohibit officers or owners of Frontier League member teams from owning, controlling, or operating another baseball team in the Frontier League or in any other baseball league unless approved by two-thirds of Frontier League's members."  (Filing No. 73 at 5.)  After Zimmerman became an officer of a Frontier League member team by his appointment as the chief executive officer of the Rock River Valley Club, Zimmerman revealed on September 2, 2014, that he was bringing a team from the Prospect League, a competitor of Frontier League, to Kokomo to play at the stadium covered by the Kokomo lease.  Washington Club and Williams allege damages from this conduct of Zimmerman.  Thus, there are allegations that support a claim for breach of fiduciary duties against Zimmerman after he became an officer of a Frontier League member team.

However, as will be discussed in greater detail below, the procedure for seeking relief for a breach of fiduciary duties in Frontier League is through the dispute resolution process mandated by Frontier League's by-laws.  Therefore, any claim for breach of fiduciary duties against the

Zimmerman Defendants in their capacity as fiduciaries of Frontier League should have been brought through the by-laws' procedures, and thus, must be dismissed from this case.

Turning to Count II of the Second Amended Complaint—civil conspiracy to breach fiduciary duties—the Zimmerman Defendants reiterate their argument from their second motion to dismiss, which is that Indiana law does not recognize a claim for civil conspiracy to breach fiduciary duties.  They further argue that the Second Amended Complaint fails to sufficiently plead facts to support such a claim even if it were recognized in Indiana.  The Zimmerman Defendants assert that the pleadings instead allege legal conclusions and unsupported factual conclusions.

In response, Washington Club and Williams explain that "the Second Amended Complaint, through paragraphs 8, 18, 23, 24, 34, 38, 39, 42, 45, 47, and 50–70, alleges specific facts showing the Zimmerman Defendants' knowledge of, and active participation in breaching, fiduciary duties owed to the League and Washington Club and the League's efforts to cause Hanners and Zimmerman to stand down."  (Filing No. 85 at 7.)  Washington Club and Williams assert that these numerous paragraphs provide significant factual allegations, not legal conclusions or unsupported factual conclusions, to support their claim for civil conspiracy to breach fiduciary duties.  They provide one specific example from the Second Amended Complaint:

> That is, Zimmerman, in his proposal and other communications, demonstrated that he knew that the League viewed Kokomo as a League opportunity, knew that the League had its own plan in place for Kokomo, and knew that Hanners', Wickline's and Schaub's actions in concert with him were contrary to the duties they owed the League, its members, and its directors.

(Filing No. 75 at 14 ¶66).  Another example comes from paragraph 54:

> Zimmerman, who owed a fiduciary duty to the League because of his integration into and control of the Rock River Valley Club, knew of the League's position relative to Kokomo and also knew of the other defendants' fiduciary duties to the League.  Nevertheless, he knowingly and intentionally acted in concert with Hanners, Wickline, and Schaub in the pursuit of the Kokomo opportunity to the detriment of the League, its members, and its directors.

([Filing No. 75 at 12](#) ¶54).

The Court pointed out in its previous Order on Motions to Dismiss that district courts from this District and the Northern District of Indiana have suggested that a claim for aiding and abetting another party's breach of its fiduciary duty is recognized in Indiana, pointing to *Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, 2004 U.S. Dist. LEXIS 6277, at *36 (S.D. Ind. Mar. 24, 2004) and *Abrams v. McGuireWoods, LLP*, 518 B.R. 491, 500 (N.D. Ind. 2014) ([Filing No. 73 at 16](#)–17).  Both *Baker O'Neal Holdings* and *Abrams* relied on the early decision from the Indiana Court of Appeals of *Sharts v. Douglas*, 163 N.E. 109 (Ind. Ct. App. 1928).

> While Indiana may recognize a claim against a third-party, non-fiduciary for aiding and abetting another party's breach of its fiduciary duty, the Amended Complaint in this case is deficient in pleading such a claim. This claim would require that the fiduciary breach its duty, that the third-party, non-fiduciary knowingly and substantially assist in the breach, and that the third-party, non-fiduciary be aware of its role when providing the assistance. *Fifth Third Bank v. Double Tree Lake Estates, LLC*, 2014 U.S. Dist. LEXIS 99758, at *34 (N.D. Ind. July 23, 2014). Further, "such a tort [would] require that the nonfiduciary act knowingly or intentionally when joining the fiduciary in an enterprise constituting a breach of fiduciary duty." *Crystal Valley Sales, Inc.*, 22 N.E.3d at 656.

([Filing No. 73 at 17](#).)  While the amended complaint was deficient in pleading such a cause of action, the Court is satisfied that Washington Club's and Williams' factual allegations in the Second Amended Complaint are sufficiently pled to give the Zimmerman Defendants fair notice of what the claim is and the grounds upon which it rests.  There are enough facts to state a claim to relief that is plausible on its face.  Therefore, the Court denies the Zimmerman Defendants' request to dismiss Count II of the Second Amended Complaint.

To conclude, the claim for breach of fiduciary duties against the Zimmerman Defendants is dismissed, and the claim for civil conspiracy to breach fiduciary duties remains pending but is limited to the time period before the Zimmerman Defendants became officers of a Frontier League

member team.  At that point in time, fiduciary duties to Frontier League would have arisen, and the claim then should have been resolved through the procedures mandated by Frontier League's by-laws.

**B.**　　　**Schaub's Motion to Dismiss (Filing No. 95)**

Bringing his Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Schaub asserts that the Second Amended Complaint must be dismissed against him because Washington Club and Williams did not avail themselves of the required forum, process, and procedure established by Frontier League's by-laws; in essence, they failed to "exhaust their administrative remedies" before filing this lawsuit against Schaub.

Schaub explains that pursuant to Frontier League's by-laws, the League Commissioner has original jurisdiction over any disputes, claims, and complaints between members.  The by-laws mandate:

**ARTICLE V.  DISPUTES, CLAIMS, AND COMPLAINTS**

(A)   Disputes, Claims and Complaints

Section 1
Except as otherwise provided in the Articles of Incorporation, these By-Laws and the Official Rules and Regulations of the League, specifically issues related to termination of membership or penalties to Members as contained in Article III(B) of these By-Laws, the League Commissioner shall have original jurisdiction within the League to hear and to determine all matters, disputes, claims, and complaints involving matters or persons within the jurisdiction of the League, including but not limited to issues between Members, players, managers, coaches, umpires, officials and employees of the League, and issues between the League and a Member of the League, or a player, manager, coach, umpire, official or employee of the League.

(Filing No. 97-1 at 3).  Schaub further explains that, not only is the original jurisdiction requirement broadly worded, the by-laws require that the dispute, claim, or complaint be presented in writing within thirty days of maturity or notice.

> Section 2
> All matters, disputes, claims, and complaints covered by Section 1 above must be presented in writing to the Office of the League Commissioner within thirty (30) calendar days of the maturity of the claim or of the date the complainant first had notice of the matters at issue, whichever occurs first. The League Commissioner may initiate investigations *sua sponte*.

(Filing No. 97-1 at 3.)

Schaub asserts that his alleged liability arises from his role as an owner, managing member, and director of a Frontier League member.  Thus, according to the by-laws, any dispute or claim against him must be brought in writing to Frontier League's Commissioner.  Washington Club and Williams knew of this fact, yet they failed to assert any claims against Schaub.  They had knowledge of their claim against Schaub but failed to act.

> (1) [A]ccording to the Second Amended Complaint, Mr. Schaub breached his fiduciary duties to the Frontier League based on involvement in a June 26, 2014 meeting and with Mr. Michael Zimmerman -- a non-owner of a Frontier League team; (2) Mr. Schaub's involvement was questioned by Washington on or about August 17, 2014, to which the Frontier League's counsel concluded there was no conflict; (3) on August 20, 2014, Washington sent a letter to the Frontier League that did not complain against Mr. Schaub; (4) on September 5, 2014 letter, Washington again demanded that the "'the [sic] League . . . consider taking its own action and Zimmerman and his related entities'", but did not mention Mr. Schaub; and (5) Washington did in fact file a complaint against three parties -- Rock River Valley Baseball Club, W. Chris Hanners and Bryan Wickline -- but not against Mr. Schaub.

(Filing No. 96 at 5.)  (Footnotes omitted.)  Frontier League has original jurisdiction over the claims against Schaub, and the Plaintiffs failed to avail themselves of the required procedure to assert claims against Schaub.  Citing *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1488 (7th Cir. 1985) and *United States Auto Club, Inc. v. Woodward*, 460 N.E.2d 1255, 1258 (Ind. Ct. App. 1984), Schaub asserts that by failing to first assert claims with Frontier League, Washington Club's and Williams' claims are barred.

In response to Schaub's argument, Washington Club and Williams explain that the Commissioner's original jurisdiction does not extend to former owners or former directors and that it is unclear whether the Commissioner's original jurisdiction even extends to current owners or directors.  They point to language in the by-laws that separately lists members, owners, directors, and employees to argue that owners and directors are not under the original jurisdiction of the Commissioner.  Washington Club and Williams further assert that the Court has subject matter jurisdiction over this action pursuant to diversity jurisdiction requirements. Citing a case from another district outside the Seventh Circuit, Washington Club and Williams claim that Frontier League's by-laws do not present a barrier to the Court's authority to hear this case against Schaub.  *See D'Antuono v. Service Road Corp.*, 789 F. Supp. 2d 308, 318 (D. Conn. 2011) (private party agreements do not divest federal courts of their subject matter jurisdiction).

The claims that Washington Club and Williams have asserted against Schaub arise from Schaub's role as an officer, director, owner, or manager of a Frontier League member team.  The claims arise from a time period when Schaub was serving in those capacities within the Frontier League.  The actions complained of occurred while Schaub was part of the Frontier League.  The fiduciary duties that were allegedly breached arose from Schaub's relationship with Frontier League and could not have existed otherwise.  Therefore, it would be unreasonable to conclude that Frontier League's by-laws do not apply to and control the claims asserted against Schaub as a director and owner, arising from his fiduciary duties in those roles.  The Court determines that Frontier League's by-laws apply to the claims asserted against Schaub.

Washington Club and Williams rely on an out-of-circuit district court opinion to assert that Frontier League's by-laws do not bar this suit against Schaub.  However, Schaub points to binding

Seventh Circuit case law to show that private party contracts that provide exclusive procedures to address a breach will bar claims from being filed in court. *D'Amato*, 760 F.2d at 1488.

The by-laws provide that the Frontier League Commissioner has original jurisdiction over all matters, disputes, claims, and complaints involving matters or persons within the jurisdiction of Frontier League. Before filing their claims in this Court, Washington Club and Williams were required to first assert their claims against their fellow owner and director—Schaub—to the Frontier League Commissioner, just as they had done with another fellow owner and director—Hanners and Wickline. Their failure to first bring their claims against Schaub to the Frontier League Commissioner bars their claim in this Court. Therefore, the Court grants Schaub's motion, and the claims asserted against Schaub are dismissed.

### C. Hanners and Wickline's Motion to Dismiss (Filing No. 103)

Hanners and Wickline bring their Motion to Dismiss pursuant to Rule 12(b)(3). They assert that Frontier League's by-laws provided the mandatory and exclusive procedure for resolving this dispute, and therefore, this Court is an improper venue to determine their alleged liability. The claims asserted against Hanners and Wickline arise from their roles as owner, employee, or director of a Frontier League member team. Hanners and Wickline explain that the by-laws mandate dispute resolution through the Frontier League Commissioner and that all other matters that are not within the scope of the "League's Dispute Resolution Clause" are subject to mandatory binding arbitration.

Pursuant to Frontier League's mandatory dispute resolution procedure, Washington Club and Williams filed a complaint with the Frontier League Commissioner against Hanners and Wickline. That complaint went through Frontier League's internal procedures, which ended with a confidential order from the Commissioner, an appeal, and another order from the Frontier League

executive committee.  Thus, Hanners and Wickline assert that Washington Club and Williams knew that their internal complaint had to be brought before the Commissioner, and they cannot now bring their claims to this Court for resolution.

Washington Club and Williams respond with the same argument asserted in response to Schaub's Motion to Dismiss—that is, that Hanners and Wickline are not members of Frontier League; they are an owner and director, and thus, they are not bound by the by-laws and are not subject to any mandatory dispute resolution procedures.  Therefore, claims can be asserted in this Court against Hanners and Wickline.

As the Court explained above, this argument is unavailing.  The by-laws apply to directors and owners of Frontier League as other "matters or persons within the jurisdiction of Frontier League."  Thus, the by-laws' requirement of dispute resolution through the Frontier League Commissioner applies to Hanners and Wickline.  As the parties acknowledge, Washington Club and Williams utilized Frontier League's internal procedures for their claims against Hanners and Wickline.

Hanners and Wickline take the next step by inferring that the "League's Dispute Resolution Clause" and mandatory binding arbitration are the only available options to Washington Club and Williams, and that after utilizing the "League's Dispute Resolution Clause," Washington Club and Williams cannot assert claims in this Court.  They appear to boot-strap the mandatory binding nature of the arbitration clause to the "League's Dispute Resolution Clause".  Hanners and Wickline assert that the by-laws are a contract governing the relationship between the parties. However, the "League's Dispute Resolution Clause" does not create a barrier to this Court adjudicating claims brought after those claims have been through Frontier League's internal

procedures.  There is no binding, exclusionary provision in the "League's Dispute Resolution Clause".

> The arbitration clause in the by-laws state:
>
> All disputes, claims and controversies not governed by the Articles of Incorporation, these By-Laws and the Official Rules and Regulations of the League will be subject to mandatory binding arbitration. All disputes, claims and controversies governed by the Articles of Incorporation, these By-Laws and the Official Rules and Regulations of the League are within the exclusive jurisdiction as stated in those documents. All disputes, claims and controversies subject to arbitration include any disputes, claims and controversies whether, legal or in equity, whether individual, joint, or class in nature, including without limitation contract and tort disputes.

(Filing No. 104-1 at 28).  But the claims asserted by Washington Club and Williams against Hanners and Wickline are governed by the by-laws and subject to the "League's Dispute Resolution Clause," not the mandatory binding arbitration clause.  Because the claims at issue here are subject to the "League's Dispute Resolution Clause" and do not require mandatory, binding arbitration, and further because the "League's Dispute Resolution Clause" is not a binding, exclusive final adjudicatory process, the Court may hear the claims asserted after those claims have been reviewed by Frontier League's Commissioner and executive committee.  Washington Club and Williams' claims have been reviewed by Frontier League's Commissioner and executive committee.  Therefore, much like judicial review of administrative decisions, the Court can adjudicate the claims brought by Washington Club and Williams against Hanners and Wickline. Therefore, the Court denies the Motion to Dismiss filed by Hanners and Wickline.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Zimmerman Defendants' Motion to Dismiss (Filing No. 80).  The claim for breach of fiduciary duties against the Zimmerman Defendants is dismissed with prejudice, and the claim for civil

conspiracy to breach fiduciary duties remains pending but is limited to the time period before the

Zimmerman Defendants became officers of a Frontier League member team.  The Court **GRANTS**

Defendant Joshua E. Schaub's Motion to Dismiss (Filing No. 95), and Schaub is dismissed with

prejudice as a defendant in this matter.  Lastly, the Court **DENIES** the Motion to Dismiss filed by

Hanners and Wickline (Filing No. 103).

      **SO ORDERED.**

Date: 9/14/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Mark Wohlford
BOSE MCKINNEY & EVANS, LLP
mwohlford@boselaw.com

Jacques C. Condon
CONDON LAW FIRM LLC
jacques@condon-law.com

Jay Jaffe
FAEGRE BAKER DANIELS LLP
jay.jaffe@FaegreBD.com

Eric J. Neidlinger
KELLER MACALUSCO LLC
eneidlinger@kellermacaluso.com

Bernie W. (Too) Keller
KELLER MACALUSO LLC
too@kellermacaluso.com

Kevin L. Murphy
KEVIN L. MURPHY PLLC
klmurphy@kevinlmurphylaw.com